**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **KIEWIT MINING GROUP INC.,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | |
| | § | **Civil Action No. 21-614**_____ |
| **SAN MIGUEL ELECTRIC** | § | |
| **COOPERATIVE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORIGINAL COMPLAINT

Plaintiff Kiewit Mining Group Inc. ("Plaintiff" or "KMG") complains of Defendant San Miguel Electric Cooperative, Inc. ("Defendant" or "SMECI") and in support thereof would show the Court as follows:

### I.    PARTIES

1.    KMG is a corporation organized and existing under the laws of Delaware, whose principal place of business is located in Omaha, Nebraska.  KMG is therefore a citizen of Delaware and Nebraska.

2.    SMECI is a Texas electrical cooperative whose principal place of business is in Texas.  SMECI is therefore a citizen of Texas.  SMECI may be served with process by and through its Registered Agent, Derrick L. Brummett, 6200 FM 3387, Christine, TX 78012 or at such other place as he may be found.

### II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332 (a)(1) because there is complete diversity between Plaintiff, a citizen of Delaware and Nebraska,

1

and Defendant, a citizen of Texas, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4.     Venue is proper in the Western District of Texas, San Antonio Division because this is the district in which a substantial part of the events or omissions giving rise to this lawsuit occurred.

5.     This lawsuit seeks declaratory relief and damages for breach of contract, and alternatively damages based on quantum meruit and promissory estoppel, arising out of SMECI's conduct and failure to pay KMG in connection with a contract to provide services for operation of a lignite mine.

## III.     FACTS

A.     <u>San Miguel Lignite Mine Contract</u>

6.     KMG performed mining services for SMECI at the San Miguel Lignite Mine ("Mine") near Christine, Texas in Atascosa County.  SMECI uses lignite from the Mine as fuel for the SMECI-owned electricity generating plant ("Power Plant") located adjacent to the Mine. KMG performed these mining services pursuant to a Management Services Agreement ("MSA") between SMECI and KMG dated effective January 1, 2011.  The MSA expired by its terms on or about June 20, 2020.  KMG's principal scope of work under MSA was to "provide the personnel and services required to manage and operate the Mine to achieve the **annual lignite production rate** necessary to supply the [Power] Plant as directed by [SMECI] and in accordance with this [MSA]."   MSA at p. 1; § 2.1 (emphasis added), a redacted version of which is attached as **Exhibit 1** and incorporated by reference herein.

7.     SMECI was obligated to pay KMG for its services under the MSA based on (a) the "Costs of Production" KMG incurred as defined in the MSA, plus (b) "Management Fees"

composed of (i) a "Base Management Fee" calculated on the basis of an amount per ton of lignite delivered, adjusted by a formula that included certain key performance indicators; and (ii) a "Risk Management Fee" that starts with a scheduled amount and is subject to certain deductions. *See id*. at pp. 12–13 and 21–22; §§ 2.8.1; 4.1; 4.2.1 and 4.2.2.

8.     The MSA defines Costs of Production as "all costs actually incurred by [KMG] in performing its obligations and responsibilities under this [MSA], but shall exclude costs or expenses that have not been authorized pursuant to this [MSA] or that have been incurred over the prior disapproval by [SMECI] thereof." *See id*. at p. 12; § 2.8.1. The MSA expressly provided a list of enumerated categories of costs for the "Costs of Production," including without limitation:

****

(e)     Machinery and equipment not capitalized or leased;

(f)     Rental and lease costs of machinery and equipment;

****

*Id*. at pp. 12–13; § 2.8.1.

9.     The MSA contemplated that SMECI would furnish the fleet of machinery and equipment necessary to operate the Mine. *See* **Ex. 1** at pp. 19–20; §§ 3.12; 3.12.1; 3.12.4; and Exhibit F. The MSA obligated KMG to maintain the machinery and equipment and except for the draglines, replace machinery and equipment when required. *See id*. at p. 20; §§ 3.12.3; 3.12.4. From time to time and as circumstances required, KMG supplemented this fleet of SMECI-owned machinery and equipment with KMG owned, rented or leased machinery or equipment and SMECI paid KMG for it as a Cost of Production.

10.     Prior to the beginning of each calendar year, the MSA required KMG to budget the quantity of lignite to be produced as well as the estimated Costs of Production for that year in an "Annual Mine Plan," for approval by SMECI.  *Id*. at p. 4; § 2.3.2.2.  The Annual Mine Plan also was required to include the information in the MSA's Exhibit B, Section 2, which included requirements for: detailed labor costs; the current machinery and equipment list and related capacities for certain machinery and equipment; overheads; production plans and statistics, including a summary of current and planned machinery and equipment quantities and work assignments (*e.g.*, one D375 dozer with dragline); a capital schedule including budgeted prices for machinery and equipment replacements and additions, as well as loan and lease obligations showing all machinery and equipment under lease, the lease payment, the remaining lease term and lease buyout amount; and a variance analysis comparing key production statistics, major equipment production rates, labor productivity, and major costs for the Annual Mine Plan.  *Id*. at pp. 46–48.

11.     Under the MSA, SMECI's approval of the Annual Mine Plan established the baseline budget under which KMG was to operate during that year and the annual quantity of lignite KMG was to produce during that year.  *See id.* at pp. 4–5; §§ 2.3.2.2; 2.3.2.3.  In some years, KMG gave SMECI certain options in the Annual Mine Plan submissions for Costs of Production depending on the quantity of lignite production and expenditures SMECI desired to include in the budget for that year. The MSA also required that SMECI notify KMG of any disapproval of the Annual Mine Plan and budget.  *Id.* at p. 5 § 2.3.2.3.  Section 2.3.2.3 of the MSA provides:

> By December 15 of each year, [SMECI] shall give [KMG] written notice of [SMECI's] approval or disapproval of the [Life of Mine Plan ("LOMP")] and Annual Mine Plan and capital budgets. If [SMECI] does not give [KMG] such

notice by December 15, [SMECI] shall be deemed to have approved the LOMP and Annual Mine Plan. If [SMECI] disapproves a LOMP or Annual Mine Plan or any portion(s) thereof, [SMECI] shall advise [KMG] of the reasons for such disapproval, and [SMECI] and [KMG] shall meet promptly and attempt in good faith to resolve their differences with respect to the Annual Mine Plan. If [SMECI] and [KMG] are unable to resolve such differences within thirty (30) days after [SMECI's] disapproval, [KMG] shall revise and resubmit the Annual Mine Plan or any disapproved portion(s) thereof, as requested by [SMECI].

If any review of an Annual Mine Plan and any revision, adjustments or modification thereof requested by [SMECI] delays the final approval thereof by [SMECI] past the beginning of the next calendar year, [KMG] may continue the Mine operations and Work hereunder into the next calendar year pursuant to the most current approved Annual Mine Plan until the matter causing such delay has been resolved.

[SMECI] and [KMG] shall meet at least quarterly (and at such other times as needed or requested by either party) to review the progress of the design, construction, development and operation of the Mine as compared to the approved Annual Mine Plan.

*Id.*

12.     The MSA also provided for modifications of the Annual Mine Plan after SMECI approved it, and such modifications occurred over the years. Section 2.3.2.4 of the MSA provides:

If during the course of this [MSA], the approved . . . Annual Mine Plan described in this Section require modification to accommodate various alternatives or desires, [SMECI] may direct [KMG] to modify the . . . approved Annual Mine Plan. [KMG] shall modify such plans promptly and for each alternative requested provide all of the information specified in this Section 2.3.

*Id.* at p. 9; § 2.3.2.4.

13.     The Mine operates pursuant to a mining permit issued by the Railroad Commission of Texas. SMECI was the mining permit holder and was responsible for securing and maintaining that permit.

14.     In mid-January 2018, KMG and SMECI agreed on Rev. 5 to the 2018 budget dated January 5, 2018. That approved budget, as part of the Annual Mine Plan, established

KMG's obligation to produce 3,073,712 tons of lignite in 2018 and the baseline Cost of Production to do so.  This budgeted lignite production was conditioned upon assumptions about SMECI meeting important deadlines in 2018, including but not limited to, allowing KMG full access to certain areas of the Mine (specifically B-pit by February 1, 2018 and the South Lease mining area by June 1, 2018) and SMECI furnishing a new Marion 8200 dragline with an 85 cubic yard bucket, operational for KMG's use by August 15, 2018.

B.    **KMG's Provision of Additional Equipment**

15.    By April of 2018, it became apparent to KMG that several SMECI-caused or SMECI-responsible events, delays and interferences had impacted and would continue to adversely impact KMG's ability to meet its budgeted annual lignite delivery quantities in 2018 in the approved 2018 budget as well as its monthly projections to enable it to meet the annual budget quantity.  The impacts from these events, delays and interferences started earlier in 2018 and continued through the year. While there were weather events during the first couple of months of 2018 that also adversely impacted KMG's production of mined lignite, KMG would have been able to catch up the lignite deliveries to the annual budgeted quantity over the course of the year absent and but for the much more serious events, delays and interferences that SMECI caused or was responsible for.

16.    The SMECI-caused or SMECI-responsible events, delays and interferences included, without limitation, delays in allowing KMG access to the South Lease areas of the Mine and re-entry into the B-pit area as SMECI previously agreed to do.  The delays in KMG's access to the B-pit area were the result of SMECI's earlier failures (dating back to 2016 and 2017) to dewater and/or to timely approve and/or provide pumps for KMG to dewater the B-pit.  These conditions were further exacerbated by heavy rainfall in early 2018.   Additionally,

because of SMECI's failure to timely secure the required Railroad Commission of Texas mining permit approval for mining in the South Lease mining area, KMG was delayed in commencing mining in the South Lease area. Further, because of SMECI's failure to construct a required creek crossing timely, substantial additional work was necessary to prepare the South Lease area of the Mine before KMG could start mining lignite, including requiring that KMG move out of the way of mining and thus, double handle 1,400,000 cubic yards (CY) of overburden material in the South Lease mining area. These delays and additional work were neither expected by KMG nor included or accounted for in the approved 2018 budget.

17. Despite the weather events and the SMECI-caused or SMECI-responsible events, delays and interferences with KMG's work, SMECI began sending KMG notices of alleged defaults under the MSA in April 2018. SMECI wrongfully claimed in these notices that KMG was in default under the MSA for failing to meet the budgeted **monthly** lignite delivery quantities set out in the Annual Mine Plan for preceding months in 2018. SMECI sent these notices without mentioning or acknowledging the SMECI-caused or responsible events, delays and interferences; and despite the fact that KMG was not required to meet budgeted monthly (instead of annual) delivery quantities of lignite and/or was contractually excused from any such requirement to the extent it existed. At the same times SMECI issued these notices of "default" in April 2018, it also was informing KMG about the 1,400,000 CY of overburden material that KMG would be required to double-handle in the South Lease mining area due to SMECI's failure to construct the creek crossing timely and SMECI had failed to allow timely access to the B-pit due to the water accumulated in it. All of this, in addition to KMG's late start in the South Lease mining area due to SMECI's delay in securing the required permit approval, impaired and promised to continue to impair KMG's progress in meeting its annual 2018 lignite production

quantity included in the 2018 approved budget and Annual Mine Plan. These issues and obstacles imposed by SMECI, together with SMECI's assertions that KMG was defaulting in its obligations under the MSA, forced KMG to accelerate its performance and perform substantial additional work resulting in KMG incurring costs that were not included in the approved 2018 budget or Annual Mine Plan.

18. In response to SMECI's notices of alleged default, KMG gave an April 17, 2018 notice to SMECI that these owner-caused or owner-responsible events constituted a change in assumptions contained in the approved 2018 Annual Mine Plan and advised SMECI of KMG's preliminary analysis of the impacts these developments would have on the approved 2018 budget. It also included the table and preliminary analysis of four (4) options and related costs to manage the significant amount of overburden material that required re-handling:

**SAN MIGUEL MINE**
**2018 BUDGET**

**SAN MIGUEL MINE**
QUANTITY SUMMARY (JUNE -DEC 2018)
2018 BUDGET (Rev 5 and Rev 6 OB-2 Spoil Pile Impact Scenarios)
April 2018 Evaluation

| Description | Unit | BASE CASE CURRENT 2018 BUDGET-RV5 (BASE CASE) START JUNE 2018 Qty START JUNE-DEC 2018 | OPTION 1 2018 BUDGET-RV6 (INPIT OB-2 REHANDLE 2018) WITH M8200 Qty START JUNE-DEC 2018 | OPTION 2 2018 BUDGET-RV6A (INPIT OB-2 REHANDLE AFTER 2018) WITH M8200 Qty START JUNE-DEC 2018 | OPTION 3 2018 BUDGET-RV6B (INPIT OB-2 REHANDLE 2018) WITH M8200 Qty START JULY-DEC 2018 | OPTION 4 2018 BUDGET-RV6C (INPIT OB-2 REHANDLE 2018) WITH SUBCONTRACTOR Qty START JUNE-DEC 2018 |
|---|---|---|---|---|---|---|
| Delivered Lignite | Tons x 1000 | 1,976 | 1,874 | 1,905 | 1,756 | 1,976 |
| Burn Lignite | Tons x 1000 | 1,956 | 1,956 | 1,956 | 1,956 | 1,956 |
| Variance from Base Case | Tons x 1000 | | -102 | -71 | -180 | |
| Ending Stockpile-Main | Tons x 1000 | 240 | 138 | 169 | 60 | 240 |
| Total Cost* | | $38,292,930 | $39,653,572 | | | $43,352,618 |
| Unit Cost | $/Ton | $19.38 | $21.16 | | | $21.94 |
| Notes | | As Budgeted in Rv5<br><br>April 2018: As communicated to SMECI in CTO #018-3, April 17th, following SMECI's comment that creek crossing to South Lease Out-of-pit stockpile OB-2 will not be completed ahead of Boxcut development and therefore the mine should explore options to create Inpit overburden spoil piles from boxcut development to be rehandled later.<br><br>KMG has explored the following options RV6, RV6A, RV6B AND RV6C. Pricing cost is estimated for the RV6 and RV6C<br><br>All Scenarios assumes M8200 operational August 15th | 1.4M BCY to be rehandled by Marion in 2018.<br><br>All Scenarios assumes M8200 operational August 15th<br><br>Note: EnerQuest Well and associated powerlines will need to be plugged and demolished by October 2018. | 1.4M BCY to be rehandled by Marion after 2018.<br><br>This option forces the M8200 to stay in higher strip ratio pits due to inpit OB-2 pile<br><br>Rehandle OB-2 AFTER 2018 Scenario delivers ~200K tons less in 2019 as a result.<br><br>Note: EnerQuest Well and associated powerlines will need to be plugged and demolished by Agust 2018.<br><br>All Scenarios assumes M8200 operational August 15th | Start delayed until July 1, 2018<br><br>1.4M BCY to be rehandled by M8200.<br><br>Dozer stripping is only for one cut in this scenario. The Marion takes over from dozers due to late start<br><br>Note: EnerQuest Well and associated powerlines will need to be plugged and demolished by December 2018.<br><br>All Scenarios assumes M8200 operational August 15th | 1.4M BCY to be rehandled by subcontractor.<br><br>Subcontractor must start August and complete the work by Mid October. Meanwhile M8200 will mine east and then back west F009 to F001. Estimated Contractor Rates @ $2.50/CY (2,000ft Haul, 2 Fleets, 2 Shift/Day).<br><br>The Difference in Cost Between moving RH with M8200 in 2018 and using RH using a Vendor is $3.7M total<br><br>Marion makes 2 separate walks to different areas of the Pit to accommodate subcontractor.<br><br>Note: EnerQuest Well and associated powerlines will need to be plugged and demolished by October 2018.<br><br>All Scenarios assumes M8200 |

All comparisons are on a budget basis only
*Cost exclude final pit reclamation and exploration drilling

Three (3) of those options involved using a new Marion 8200 dragline that SMECI was to furnish that the approved budget assumed would be operational by August 15, 2018. All but one (1) option involved reductions in delivered lignite quantity in 2018, ranging from 71,000 tons to 180,000 tons. Some of the options reflected partial estimates of additional costs from approximately $1.5 million to $5.1 million above those included in the approved 2018 budget. The letter also notified SMECI that the ultimate costs and impacts would be determined by the equipment used to address the 1,400,000 CY of material that now required re-handling.

19. By letter dated April 24, 2018, KMG also disputed the assertions of default in SMECI's notices and noted that the gross shortfall in lignite tons delivered as of April 19, 2018 was 94,421 tons but that that amount needed to be reduced by the 32,253 tons calculated for what KMG understood was an agreed change order to the budgeted tons as a result of conditions in the B-pit. The letter also advised SMECI that after this adjustment, the difference on delivered versus budgeted tons remaining was 62,168 and 45,000 of those tons were subject to the discrepancy between the pit survey data and the inventory burn data and if that difference was accounted for, the difference would only be approximately 17,000 tons. KMG also requested in that letter a May 1, 2018 meeting with SMECI to focus on a plan that would meet SMECI's requirements through 2018.

20. On the following day, April 25, 2018, representatives of KMG and SMECI, including Andres Silva, Simon Zulu, Larry Stellenberg and Kirk Rich from KMG and Dave Burris, SMECI Fuels Manager, met to review the Key Performance Indicators ("KPI") for January – March 2018 and to have a Fuels update meeting. The 32,253 ton amount of lignite referenced by KMG in the April 24, 2018 letter, as subject to an agreed change order related to the dewatering and late entry into B-pit, was noted on the "January – March 2018 KPI log –

2018 Monthly Changes" section that was signed by Dave Burris on April 25, 2018 with the handwritten note by Mr. Burris that SMECI did not agree with Page digging condition calculation 32,253 tons and "will re-evaluate."  A month later, on May 25, 2018, Mr. Burris signed the following month's "January – April 2018 KPI Log – 2018 Monthly Changes" section with the same entry regarding the Page digging conditions, but without the handwritten note purporting to disagree with it.  Interestingly, Mr. Burris thereafter refused to sign similar logs for the following months, despite the fact that his predecessor, Dan Cates, had signed the logs to acknowledge that the parties had discussed and reviewed the issues referenced in them.

21.    In the April 25, 2018 meeting, Mr. Burris also directed KMG to pursue option three (3) of the South Lease options included in KMG's April 17, 2018 notice and this direction was confirmed in the notes and recap of the April 25, 2018 meeting circulated in an April 25, 2018 email from Simon Zulu of KMG to Mr. Burris and the other KMG attendees.  This direction was based on the assumption that mining in South Lease would not start until June 25, 2018, at the soonest, and the 1,400,000 CY of overburden requiring double handling would be re-handled in 2018 as opposed to another option, which contemplated doing it in a later year with the M8200 new dragline that SMECI was to provide.  The previously approved 2018 budget assumed that KMG could commence mining in the South Lease area by June 1, 2018. The notes also reflect that SMECI directed KMG in the meeting to build three (3) stockpiles in specified locations in B-pit to resolve the dump room (the 1,400,000 CY of overburden requiring double handling) issue since the area was subject to the reclamation bond required by SMECI's mining permit and represented to KMG that the South Lease mining permit had been approved by the Railroad Commission of Texas without conditions.

22.     The next several months gave rise to additional delays and issues that were the fault or responsibility of SMECI.  In May 2018, KMG and SMECI representatives met to discuss the notices of "default" from SMECI.  In this meeting, the KMG representatives warned SMECI that mining output in 2018 would be impacted if the mining permit for the South Lease, which was SMECI's responsibility to secure, was delayed and SMECI representatives again represented to KMG that the permit would not be delayed.  Additionally, at this same meeting, KMG discussed and warned SMECI of the impact of the permit change that would add the 1,400,000 CY of double-handled material to KMG's scope of work in South Lease.  At some point following this meeting, SMECI told KMG that the South Lease mining permit from the Railroad Commission of Texas included conditions related to establishing water control, required a subsequent permit revision.  As a result, the issuance of the permit and KMG's ability to access the South Lease were delayed almost a month.

23.     On June 4, 2018, KMG issued an owner delay notice pursuant to Section 5.12 of MSA regarding SMECI's failure to obtain the permit authorization necessary for KMG to commence operations in the South Lease pit by June 1, 2018.  *See* **Ex. 1** at p. 31–32; § 5.12.  It also advised SMECI that 50,000 tons of lignite were budgeted to have been taken out of the South Lease pit in June 2018.

24.     On June 14, 2018, KMG advised SMECI that the parties would have to work together to ensure that the Power Plant did not run out of lignite the Power Plant needed to operate.  This same email notice also advised SMECI, in part, that: (a) the delay in access to South Lease had a large impact on lignite deliveries and any opportunity in the past to make up mining tonnage elsewhere had been lost; (b) KMG would mobilize additional equipment to bring extra stripping capability to bear on the South Lease to gain schedule back; (c) KMG was getting

11

availability and pricing information for either a Vermeer or Wirtgen Miner machine because KMG was having to schedule large amounts of additional mining each month from late summer through fall and the two (2) existing miner machines did not provide sufficient capacity; and (d) KMG planned to mine the 185,000 tons planned from B-pit plus make up the 35,000 tons unmined from the previous month for a total of 220,000 tons in June. Additionally, KMG requested that SMECI make a decision on options KMG previously presented to SMECI to make up for the unmined lignite tonnage as a result of the SMECI-caused or SMECI-responsible delays. KMG concluded by assuring SMECI that it was going to start delivering additional machinery and equipment to the Mine to ensure that the Power Plant did not run out of coal.

25.     In response, in a June 18, 2018 email, Mike Kezar, SMECI's General Manager, confirmed that Dave Burris had selected one (1) of the options KMG had presented and that he and Simon Zulu had worked to revise the Mine Operations Plan with the Railroad Commission of Texas to accommodate that option.

26.     KMG's President, Chris Loeffler, met with SMECI's General Manager, Mike Kezar, on June 25, 2018. During that meeting, Mr. Kezar described what he termed the huge financial impacts of running out of coal, noting it as "many millions of dollars." Mr. Kezar agreed in the meeting that adding supplemental machinery and equipment made sense and authorized the provision of this equipment.

27.     On June 26, 2018, as a follow up to the meeting, Mr. Loeffler sent a letter to Mr. Kezar, notifying SMECI of KMG's proposed recovery plan to deliver 3.074 million tons of lignite (the budgeted quantity in the approved annual budget for 2018) to the Power Plant. The letter included KMG's recovery proposal, noting the mobilization of additional machinery and

equipment and people to meet the budgeted production deficit as well other potential scenarios that might affect the schedule.

28.    On July 2, 2018, KMG's Executive Vice President, Jay Johnson, met with Mr. Kezar, to review lignite tonnage production forecasts.  The document KMG presented to SMECI in this meeting set out a lignite delivery schedule and a cumulative budget of 3.074 million tons of delivered lignite in 2018, the same quantity reflected in the approved 2018 budget.  It also indicated milestones and durations for some of the additional machinery and equipment KMG proposed to furnish and the two (2) additional personnel required for additional maintenance support for that additional equipment.  At no time during this meeting did Mr. Kezar indicate that SMECI would refuse to pay for the additional equipment and personnel, and SMECI thereafter paid the cost of the additional personnel.

29.    Beginning in July 2018, KMG mobilized additional machinery and equipment to the Mine to supplement the SMECI-owned machinery and equipment KMG used for the production of lignite, with every expectation of being paid for the rental of that machinery and equipment.  KMG mobilized this machinery and equipment to carry out SMECI's directives to produce the previously approved quantity of lignite while at the same time attempting to: (a) overcome the permit delays and the late start of mining in South Lease, (b) the double handling of the 1,400,000 CY of materials, and (c) the delayed access in B-pit, all of which were the fault and responsibility of SMECI.  Thereafter, KMG mobilized additional equipment to deal with further delays and issues caused or created by SMECI or for which SMECI was responsible.

30.    On July 11, 2018, SMECI's Fuels Manager, Dave Burris, sent an email to KMG's Mine Manager, Andres Silva, requesting an updated annual budget for presentation to the SMECI board.  In this email, Mr. Burris also asked KMG to update and provide KMG's planned

expenditures for the remainder of the year. In response, Mr. Silva of KMG sent Mr. Burris an updated annual budget and additional notes on July 13, 2018. Mr. Silva and Mr. Burris spoke on the phone the following day about the budget file. On July 17, 2018, Mr. Silva sent Mr. Burris an updated budget file and updated notes. The email clearly reflects that Mr. Silva and Mr. Burris discussed additional rented machinery and equipment, and stated:

| | |
|---|---|
| **From:** | Andres.Silva |
| **Sent:** | Tuesday, July 17, 2018 8:33 AM |
| **To:** | Burris, Dave W. |
| **Cc:** | Larry.Stellenberg; Kirk.Rich; Jared.Bartel |
| **Subject:** | RE: Operating Budget Update |
| **Attachments:** | 071718 SMM - July thru December Forecast 2018.xlsx |

Please see attached file with updated numbers and notes. We have made the changes we talked about yesterday over the phone.

1- Fuel rate was updated from $1.90/gal to $2.20/gal
2- Scrapers rates used are the same as c-pit north area on boxcut
3- D10s, 777c and Miner rental cost are under 151.10.090.00

The budget files attached to the email also clearly reflected the additional machinery and equipment and rental costs for the additional machinery and equipment that had been furnished to date as well as the miner that KMG was attempting to locate and mobilize to the site. KMG also noted that KMG was making these expenditures and expected reimbursement for that additional machinery and equipment as Costs for Production under the MSA. The budget file and notes clearly referenced "Equipment Rent added to Projection" and included in pertinent parts:

| | | Added Scope of Work | $ | 384,480.00 | M8200 moving 1.4M cyds of rehandle |
| | | Added Scope of Work | $ | 163,430.00 | Fuel adjustment on line above. 277K cyds of Dozer Stripping in South Lease to mitigate the impact from the 1.4M re-handle and late start in South Lease |
| | | Added Scope of Work | $ | 1,171,500.00 | 825K cyds with Scrapers in South Lease to mitigate the impact from the 1.4M re-handle and late start in South Lease |
| | | Added Scope of Work | $ | 830,580.00 | 654K cyds of Pre-strip in B/BX pit to keep M8050 horizon from two passing to mitigate the impact from the 1.4M re-handle and late start in South Lease |
| | | | $ | 5,288,222.29 | |

**Major Quantity Changes**

| | Budget cyds | Forecast cyds | Notes |
|---|---|---|---|
| Scraper F Pit | 700,000 | 1,525,000 | Original plan was to take F7. Current plan is to split F10, F11, F1, F2, F3 with dozers. They will help with TS and HB for those cuts |
| Dozer F Pit | 1,658,000 | 1,935,000 | Original plan was to take F8 and F9. Current plan is to split F10, F11, F1, F2, F3 with scrapers. They will also take F4, F5, and F6. |
| Pre-Strip PC2000 (all) | 6,604,000 | 7,258,000 | Original plan was to 2 pass with the Marion 8050 in May. Current plan is to keep the horizon low taking an additional 654k yards of PS. |
| Marion 8200 | - | 1,400,000 | Marion will move 1.4 million yard stockpile that was not in budget. With rehandle it will be 1.6 million yards. |

**Equipment Rent added to Projection**

| Equipment | Cost | Notes |
|---|---|---|
| Two D10 | $ 205,000 | These two dozers are already on site |
| Two 777 | $ 210,000 | These two haul trucks are already on site |
| One Miner | $ 238,500 | |

31.    KMG also sent similar and updated information to SMECI on October 8, 2018 with an October through December 2018 budget re-forecast, in response to SMECI's request. This October 2018 re-forecast included a timeline through year-end for usage of the additional KMG-furnished rental machinery and equipment, as well as the arrival in late September 2018 of the additional Vermeer Miner.    SMECI clearly knew of KMG's increased expenditures for additional machinery and equipment and its request and expectation to be compensated for it as increased Costs of Production in order to maintain SMECI's desired lignite output despite SMECI's omissions, failures, delays and obstacles.    After KMG provided SMECI the updated budgets in July 2018 and October 2018 as requested by SMECI, SMECI still did not communicate to KMG that there was any rejection of SMECI's intent or responsibility to pay for this additional machinery and equipment until December 2018.

32.    There were additional SMECI-caused delays, interferences and inefficiencies in 2018 after KMG agreed to furnish this additional machinery and equipment, and KMG used this additional machinery and equipment to attempt to mitigate the additional impacts of those delays, interferences and inefficiencies in 2018.   Among other issues, these included: (a) delay in

operations of the new Marion 8200 dragline ("M8200"); (b) the delivery of the M8200 dragline with an 80 CY bucket instead of the 85 CY bucket SMECI directed KMG to use in KMG's production calculations; (c) the inability to operate the M8200 dragline several times due to a substation outage and swing brake failures; (d) KMG being further delayed in making Cuts F001 and F002 in the South Lease due to blocked access resulting from erection and/or repair of the M8200 dragline; and (e) significant rainfall in a number of months of 2018. Each of these events adversely impacted KMG's plan to mine and deliver the budgeted quantity of lignite in 2018. At the same time, and in the midst of these additional delays, interferences and inefficiencies, SMECI began advising KMG of increased burn rates in the Power Plant, meaning that the Power Plant expected to burn more lignite than previously reported and that it was even more important to attempt to maintain 2018 lignite production near the budgeted levels.

33. On August 7, 2018, KMG notified SMECI by email and letter of updated lignite production projections and the impact on KMG of potential delays of the M8200 dragline start-up, taking into consideration the increased burn rate projected by SMECI. The projections in this letter also took into consideration the additional rental machinery and equipment supplied by KMG, reflected that that if the new M8200 dragline started up as scheduled on August 15, 2018, KMG projected no change to the current lignite delivery schedule of approximately 3.074 million tons (again, equivalent to the amount in the previously approved 2018 budget and later in the recovery option that SMECI directed KMG to pursue) and would result in a year end stockpile inventory of 230,000 tons. The letter also projected two (2) additional scenarios with projections that were based on different M8200 dragline startup dates.

34. On August 20, 2018, KMG notified SMECI of an event of delay under the MSA, stating that the approved budget assumed the new M8200 dragline would start production by

August 16, 2018 and the dragline was not operational on that date. The notice advised that when the delay was complete KMG would be able to fully assess the impact on the Mine plan. The notice also stated that the current options would require the use of other machinery and equipment fleets to move the yardage shortfall created by the lack of production of the M8200 dragline.

## C.    Subsequent Events

35.    On October 8, 2018, KMG requested that SMECI authorize more scraper work to recover from the M8200 dragline delays. This email request referenced an even higher lignite burn rate communicated by SMECI that would result in a lower year-end lignite stockpile amount. As of that date, KMG projected that the M8200 dragline delays had resulted in reducing potential lignite deliveries by 78,000 tons. SMECI never authorized this recovery action.

36.    Instead, on October 29, 2018, SMECI sent KMG another purported default notice under the MSA. This purported default notice referred to the original approved 2018 budget, which included an estimate that KMG would deliver 250,730 tons of lignite in September 2018, and asserted KMG delivered only 198,900 tons during the month. As with SMECI's previous "default" notices in 2018, the letter ignored the M8200 dragline delays, the weather events and the other SMECI-caused delays, impacts and inefficiencies. The letter also referenced KMG's failure to adhere to the May 1, 2018 revised delivery schedule KMG previously submitted, ignoring that SMECI had rejected that schedule. In this letter, SMECI again claimed that under the revised delivery schedule, KMG failed to meet the lignite delivery quantities for the months of May, July and September, 2018, which were not grounds for default under the MSA and even if they were, were excused. SMECI also wrongfully asserted that KMG's failure to meet the revised delivery schedule meant that KMG had not cured KMG's prior "defaults" under the

MSA, and SMECI demanded that KMG take immediate action to increase production rates in order to both make up the amount of lignite "shortfalls" from prior months and meet its future delivery "obligations." SMECI sent a similar notice the following month, dated November 15, 2018, in which it asserted KMG had not met its budgeted monthly deliveries of lignite in May, July, September and October, 2018 and again failed to address the impact on lignite deliveries of the SMECI-caused delays, impacts and inefficiencies.

37.    On or about November 19, 2018, KMG sent SMECI a notice of termination of the occurrence of the M8200 dragline related delays, listing the timing and impacts of a number of the delaying events and a similar, separate notice of termination of the occurrence of the South Lease access delay, which also listed the impacts from that delay. The November 19, 2018 letter also included the following recap of the amounts due for the additional machinery and equipment KMG furnished:

### Equipment Charges – Additional Equipment for Impact Mitigation and Recovery

Kiewit has mobilized a significant amount of additional equipment in order to mitigate the 330,062 tons of impact during 2018. The October year-to-date amount for which Kiewit is due payment totals $1,078,072.

The table below shows both year-to-date amounts and also provides an end-of-year projected amount.

**Outstanding Equipment Charges - Equipment For Impact/Delay Recovery**
Monthly Rent

| Equipment | Mobilization | July | August | September | October | November Est. | December Est. | Total |
|---|---|---|---|---|---|---|---|---|
| Cat 777C | $13,950 | $2,880 | $33,063 | $46,613 | $26,538 | $35,000 | $35,000 | $193,043 |
| Cat 777C | $13,950 | $2,880 | $38,069 | $42,119 | $27,063 | $35,000 | $35,000 | $194,080 |
| Cat D10 | $28,450 | $2,685 | $54,525 | $63,150 | $35,025 | $46,000 | $46,000 | $275,835 |
| Cat D10 | $19,340 | $24,000 | $28,410 | $53,408 | $42,285 | $46,000 | $46,000 | $259,443 |
| Wirtgen 2200 | $17,730 | | $68,000 | $68,000 | $68,000 | $68,000 | $68,000 | $357,730 |
| PC 1250 | $28,350 | | $35,613 | $58,645 | $33,948 | $42,000 | $42,000 | $240,555 |
| Coal Bodies | $101,387 | | | | | | | $101,387 |
| | $223,157 | $32,445 | $257,679 | $331,934 | $232,858 | $272,000 | $272,000 | $1,622,072 |

38.    Additionally, on or about November 28, 2018, KMG sent SMECI a response to SMECI's default notices, disputing the notices and stating that KMG's performance of the

monthly lignite delivery targets was excused by a number of events impacting lignite production. It also referenced the impact on KMG's work due to significant rainfall during September through mid-November 2018. The response included a summary of each of the major categories of delay and their impacts, that collectively would have resulted in a 330,000 ton shortage of delivered lignite and that the KMG-furnished additional machinery and equipment mitigated 189,600 tons of this impact. The letter also included a summary of KMG's invoices and charges that SMECI had not paid as of that time. As of that time, KMG advised SMECI that the amounts claimed due for the additional machinery and equipment KMG furnished, including for mobilization, was $1,078,072 through October 2018 and $1,622,072 projected through year-end 2018. This letter also included reference to an additional excavator that KMG had added to the supplemental machinery and equipment fleet it furnished by that time.

39.     In December 2018, SMECI responded to KMG's November 28, 2018 letter, asserting that SMECI disagreed that KMG was excused from its purported defaults under the MSA. The letter argued that KMG was in default and yet again omitted any reference to the weather issues or the SMECI-caused or SMECI-responsible delays, impacts and inefficiencies. This letter was SMECI's first written indication that SMECI disputed the obligation to pay for the additional machinery and equipment KMG furnished over the course of 2018.

40.     Following additional unsuccessful discussions about payment for this machinery and equipment, KMG sent SMECI a March 29, 2019 letter and invoice in the amount of $1,652,258.67 for the rental of this machinery and equipment from July to December of 2018. The invoice is attached as **Exhibit 2** and incorporated by reference herein. To date, SMECI has failed and refused to pay KMG the amounts due under the invoice, though SMECI paid KMG the rental costs for this machinery and equipment in 2019 and 2020.

**D. Purported Insurance Deductible Deduction from 2019 Risk Management Fee**

41.     On or about November 24, 2019, a large SMECI-furnished Komatsu 330M dump truck, sometimes referred to as a "coal train" or "tractor," was destroyed by an accidental fire. The federal Mine Safety and Health Administration ("MSHA") investigated the fire and determined that the fire was not due to the negligence or responsibility of KMG.

42.     At the time of the fire, the fair market value of the destroyed Komatsu 330M truck was approximately $25,000 to $35,000. At that time, it was a very old and heavily-used machine that was no longer manufactured. SMECI made no demand on KMG that it repair or replace the Komatsu 330M and apparently submitted an insurance claim on its property policy.

43.     In late May 2020, approximately a month before KMG's MSA contract ended, Dave Burris of SMECI orally advised KMG's Andres Silva of a disagreement over the calculation of the amount due KMG for the 2019 Risk Management Fee. A few months later, after the term of the MSA expired in June 2020 and KMG discontinued work at the Mine, Mr. Burris of SMECI notified KMG in an August 4, 2020 email that SMECI was withholding payment on certain progress invoices until it received an official report from MSHA regarding the coal train fire in November 2019 and SMECI's insurer completed an insurance claim determination, and that expenses incurred by SMECI for the insurance claim would be deducted from the remaining 2019 Risk Management Fee due KMG under the MSA.

44.     KMG objected to this withholding and notice of offset in a September 1, 2020 with a letter from Mike Nimmo of KMG to Mr. Burris of SMECI.

45.     In a September 20, 2020 letter, SMECI's General Manager Mike Kezar advised KMG's President Chris Loeffler that "the insurance company determined that the 330M tractor will be replaced with a 777G tractor and [SMECI] will pay the $1 million deductible as defined

in the mine equipment insurance policy.  [SMECI] will apply the $1 million deductible against the 2019 risk management fund."  A new 777G tractor costs $1.6 million to $1.7 million and it defies common sense that SMECI would insure a $25,000 to $35,000 machine for $1.6 or $1.7 million or that a property insurer would determine what equipment an insured should replace a damaged piece of equipment with.  Thereafter, SMECI purported to furnish an incomplete portion of its insurance policy and other incomplete and inadequate "proof" to substantiate its claims for an offset of the remaining balance of KMG's 2019 Risk Management Fee in the amount of $418,202.

46.     SMECI owes KMG the remaining balance of the 2019 Risk Management Fee in the amount of $418,202.  KMG's calculation presented to SMECI for the balance of this Risk Management fee is attached as **Exhibit 3** and incorporated by reference herein.  To date, SMECI has wrongfully withheld and failed and refused to pay the $$418,202 amount due under the invoice based on its wrongful claim that it is entitled to offset that amount against the 2019 Risk Management Fee due under the MSA.  SMECI also failed to mitigate its damages regarding the coal train by not demanding that KMG repair or replace it with a like machine.

47.     Even if SMECI was otherwise entitled to assert the coal train fire related insurance deductible as an offset against KMG's 2019 Risk Management Fee, which KMG denies, SMECI failed to satisfy conditions precedent under the MSA to assert such a claim against KMG by giving timely and proper notice required by the MSA.

# IV.   CAUSES OF ACTION

## COUNT I - Breaches of Contract

48.    Paragraphs 1 through 47 above are incorporated by reference herein.

49.    The MSA is a valid and enforceable contract between KMG and SMECI.

50.    KMG substantially performed and fully performed its duties under the MSA.

51.    SMECI materially breached or alternatively, breached, the MSA by:

    a.    Failing to pay KMG amounts due under the MSA when due, including without limitation, for the additional machinery and equipment KMG provided in 2018 in the amount of $1,652,258.67 as a Cost of Production as well as numerous other invoices due under the MSA between 2018 and 2020.  The MSA allows KMG to charge for approved "Costs of Production."   As a result of these breaches by SMECI, KMG was injured and is therefore owed at least $1,652,258.67.

    b.    Failing to promptly advise KMG of the approval or disapproval of the additional cost of the supplemental machinery and equipment KMG provided in 2018 in the amount of $1,652,258.67 and failing to seek any required board of directors' approval of an adjusted or amended 2018 budget covering the additional machinery and equipment KMG provided in 2018. The MSA required that SMECI provide a SMECI representative to furnish, with reasonable promptness, any instructions or approval that may be required under the MSA.  **Ex. 1** at p. 21; § 3.18.  As a result these breaches by SMECI, KMG was injured and is therefore owed at least $1,652,258.67.

    c.    Failing to promptly approve or disapprove reasonable change orders covering the additional machinery and equipment KMG provided in 2018. The MSA required

that SMECI provide a SMECI representative to furnish, with reasonable promptness, any instructions or approval that may be required under the MSA. **Ex. 1** at p. 21; § 3.18.  As a result of these breaches by SMECI, KMG was injured and is therefore owed at least $1,652,258.67.

d.  Failing to communicate any board or executive disapproval of the budget amendment or modification, or disapproval of reasonable change orders, until December 2018. The MSA required that SMECI provide a SMECI representative to furnish, with reasonable promptness, any instructions or approval that may be required under the MSA.  **Ex. 1** at p. 21; § 3.18.  As a result of these breaches by SMECI, KMG was injured and is therefore owed at least $1,652,258.67.

e.  Wrongfully withholding and failing to pay KMG amounts due for the 2019 Risk Management Fee in the amount of $418,202, in violation of the payment obligations and Risk Management Fee Provisions of the MSA. As a result of these breaches by SMECI, KMG was injured and is therefore owed at least $418,202.

f.  Failing to furnish, or to timely furnish, equipment and machinery, permits and access to the mining areas as required by the MSA.  The MSA provides and the 2018 Annual Mine Plan and approved budget contemplated that SMECI was responsible for furnishing owner-provided equipment, such as the M8200 dragline (MSA at p. 20; § 3.12.4), for securing the required permits (MSA at p. 21; § 3.17), such as the Railroad Commission of Texas mining permit, and for furnishing access to the mining areas.  KMG included those assumptions in the Annual Mine Plan and approved 2018 budget, based on the timely delivery, start-up and operation of the M8200 dragline and timely access to certain agreed upon

mining areas.  As a result of these breaches by SMECI, KMG was injured and is therefore owed at least $1,652,258.67.

g.   Wrongfully or alternatively, arbitrarily, capriciously and/or in bad faith interfering with, hindering or preventing KMG's performance of the MSA during 2018.  A party to a contract has an implied duty not to delay or hinder the other party's performance of the contract. As a result of this misconduct by SMECI, the purported "no damage for delay" provision in Section 5.8 of the MSA is not enforceable under Texas law.  The MSA provides, and the 2018 Annual Mine Plan and approved 2018 budget contemplated, that SMECI was responsible for timely furnishing owner-provided equipment (MSA at p. 20; § 3.12.4), such as the M8200 dragline, timely securing and providing the required permits, such as the Railroad Commission of Texas mining permit (MSA at p. 21; § 3.17), and timely furnishing access to the mining areas.  KMG included those assumptions in the Annual Mine Plan and the approved 2018 budget.  SMECI's active interference with, and wrongful delaying and hindering of KMG's ability to perform, the MSA and 2018 Annual Mine plan was displayed in part by: (i) SMECI's failure to dewater and approve access to B-pit, (ii) the delays in securing the South Lease mining permit, (iii) the double handling of 1,400,000 CY of material in the South Lease due to SMECI's failures to construct the creek crossing, and (iv) delays in making the M8200 dragline available and operating in the represented capacity. These actions or inactions constitute bad faith by SMECI and were arbitrary and capricious acts and omissions without due consideration, and in disregard of, KMG's rights.  As a result, KMG incurred additional costs for which KMG was

24

not compensated. KMG timely requested extensions of time for its performance and additional compensation for its added Costs of Production and SMECI refused to provide either. Instead, in continuation of its pattern of bad faith, SMECI continued sending KMG notices of purported default under the MSA for alleged failure to make progress against the approved quantity of lignite delivery. As a result of SMECI's acts, omissions and delays, KMG's ability to deliver lignite during 2018 was impacted and its Costs of Production were increased by the efforts to add machinery and equipment to mitigate those delays. As a result of these breaches by SMECI, KMG was injured and therefore is owed at least $1,652,258.67.

h. Constructively accelerating KMG's performance of the MSA in 2018. KMG incurred additional costs for which it was not compensated due to the constructive acceleration of KMG's schedule, owner interference and/or delays SMECI caused or was contractually responsible for. As a result of SMECI's acts, omissions and delays, KMG's ability to deliver lignite during 2018 was impacted and SMECI continued sending KMG notices of purported default under the MSA. Those delays required KMG to increase and accelerate its efforts to add machinery and equipment to produce a higher quantity of lignite in a shorter period of time. SMECI demanded that KMG deliver the lignite quantity specified in the original approved 2018 annual budget by the original budgeted date and KMG actually accelerated the work in order to deliver the lignite by the original budgeted date and incurred added costs as a result. As a result of these breaches by SMECI, KMG was injured and is therefore owed at least $1,652,258.67.

## COUNT II - Declaratory Judgment

52.     Paragraphs 1 through 47 above are incorporated by reference herein.

53.     KMG, a person interested under the MSA contract, seeks a declaration pursuant to 28 U.S.C. §§ 2201–2202, the Federal Declaratory Judgment Act, and/or Texas Civil Practice and Remedies Code Section 37.001, *et seq.*, the Texas Uniform Declaratory Judgment Act, determining the following:

   a.  SMECI did not actually pay, or alternatively inappropriately colluded with its insurer to pay, a $ 1 million dollar deductible on its insurance claim for the coal train fire, such amount is not an actual cost or amount SMECI paid under Section 4.4.2 (2) or (3) of the MSA and therefore, Section 4.4.2 (2) or (3) of the MSA does not permit SMECI to offset the remaining amount owed KMG for the 2019 Risk Management Fee under the MSA.

   b.  SMECI is not entitled to deduct or offset from KMG's 2019 Risk Management Fee any inflated amount of any insurance deductible or insurance claim arising from or based on fraud or collusion, or intentional over-insurance by SMECI of its property, because it would unjustly enrich SMECI to be permitted to do so.

   c.  The coal train fire was not caused by KMG's negligence and therefore, Section 4.4.2 (4) of the MSA does not permit SMECI to offset the remaining amount owed KMG for the 2019 Risk Management Fee under the MSA.

   d.  Since a coal train fire that was not due to the mismanagement, negligence, gross negligence or willful misconduct or other fault of KMG does not have anything to do with prudently managing risk under the MSA, SMECI is not entitled to deduct

or offset any amount from KMG for the 2019 Risk Management Fee under Section 4.4.2 or Section 5.9.4 of the MSA.

e. Because SMECI agreed in the MSA to release KMG from any liability for and agreed to indemnify KMG from and against all losses, claims, demands, liabilities and causes of action of every kind and character on account of property damage of SMECI arising out of or resulting from KMG's services under the MSA pursuant to Section 5.28.1 of the MSA, SMECI has released KMG from all liability for the coal train fire and may not charge or offset any amount KMG is entitled to under the MSA, including without limitation KMG's 2019 Risk Management Fee.

f. Since the fair market value of the coal train was $25,000 to $35,000, any purported insurance claim in excess of that must include other elements, such as loss of use or business interruption, which are excluded by the consequential damages exclusions of Sections 5.19.2 and 5.28.3 of the MSA and SMECI is not entitled to deduct or offset consequential losses from KMG's 2019 Risk Management Fee.

g. Recovery from insurers is not excluded or excepted from the consequential damages exclusions of Sections 5.19.2 and 5.28.3 of the MSA.

h. No other basis in the MSA entitles SMECI to offset the purported insurance claim deductible arising from the coal train fire against KMG's 2019 Risk Management Fee.

i. In the alternative, the MSA is ambiguous regarding SMECI's right to offset the purported insurance claim deductible arising from the coal train fire against

KMG's 2019 Risk Management Fee, as the word "claims" is undefined in Section 4.4.2 (2) and (3) of the MSA and/or Section 5.9.4 of the MSA demonstrates the parties intent that such claims must arise from mismanagement, negligence, gross negligence or willful misconduct of KMG.

j. SMECI failed to give timely and proper notice to KMG under Section 5.20.2 of a claim for offset of the purported insurance claim deductible arising from the coal train fire against KMG's 2019 Risk Management Fee even if it was otherwise entitled to make this claim under the MSA and such claim is conclusively deemed waived.

k. SMECI waived its right to assert a claim for offset of the purported insurance claim deductible arising from the coal train fire against KMG's 2019 Risk Management Fee even if it was otherwise entitled under the MSA.

l. SMECI's right to offset its purported insurance claim deductible arising from the coal train fire against KMG's 2019 Risk Management Fee is barred by its fraudulent conduct.

m. SMECI's right to offset its purported insurance claim deductible arising from the coal train fire against KMG's 2019 Risk Management Fee is barred or limited by its failure to mitigate damages. KMG could have purchased a similar coal train for approximately the $25,000 to $35,000 or paid the value of it but SMECI failed to request or demand this. *See* Sections 3.1 and 3.12.4 of the MSA.

n. SMECI's prior material breaches of the MSA bar it from relying upon procedural matters, such as notice, to deny KMG's claims and bar it from enforcing the MSA.

o. SMECI's interference with and prevention of any required performance bar it from relying on procedure matters, such as notice or conditions precedent, to attempt to prelude KMG's claims.

p. The no damages for delay provisions of the MSA, including without limitation in Section 5.8 of the MSA, are unenforceable due to SMECI's wrongful, fraudulent, arbitrary, capricious and/or bad faith conduct interfering with, hindering or preventing KMG's performance of the MSA.

## COUNT III - Quantum Meruit

54. Paragraphs 1 through 47 above are incorporated by reference herein.

55. In the alternative KMG also asserts a claim for quantum meruit for the recovery of the additional machinery and equipment charges. KMG provided valuable services to SMECI by furnishing the additional machinery and equipment in 2018. SMECI accepted those services, and ultimately used and enjoyed those services in its plant. KMG reasonably and timely notified SMECI that it expected to be paid for performing those services. KMG's right to recover in quantum meruit is based upon SMECI's promise implied in law to pay for beneficial services rendered and knowingly accepted. SMECI has been unjustly enriched and KMG would be unjustly penalized if SMECI were permitted to retain the benefits of the partial performance without paying anything in return. As a result, KMG is entitled to recover the amount of at least $1,652,258.67 as the value of the benefits conferred SMECI.

## COUNT IV - Promissory Estoppel

56.     Paragraphs 1 through 47 above are incorporated by reference herein.

57.     The doctrine of promissory estoppel bars SMECI from disputing the charges for the additional machinery equipment furnished by KMG to enable it to overcome the owner-caused/owner-responsible delays in 2018 and requires enforcement of SMECI's promise to amend the approved 2018 budget to include this equipment as a reimbursable Cost of Production.  Pursuant to the MSA and 2018 Annual Mine plan, SMECI promised to pay KMG for approved "Costs of Production" and represented to KMG that SMECI had selected the option proposed by KMG to mobilize additional machinery and equipment to produce the original quantity of lignite included in the 2018 approved budget and Annual Mine Plan, that the cost for doing so would be presented in a revised budget to the SMECI board for approval it was seeking board approval for an amended budget that would include the cost of the additional machinery and equipment and then failed to communicate any rejection of the obligation to pay for the machinery and equipment until many months later in December 2018.

58.     It was foreseeable to SMECI that KMG would rely on that promise and SMECI's representations regarding inclusion of those amounts in the budget.  KMG substantially relied on that promise and those representations to its detriment and furnished in good faith and operated the additional machinery and equipment.  Therefore, SMECI is estopped from disputing the charges for the additional machinery and equipment furnished by KMG to enable it to overcome and mitigate the owner-caused/owner-responsible delays in 2018 and KMG is entitled to recover the amount of at least $1,652,258.67 in reliance thereon.

30

## V.    CONDITIONS PRECEDENT

59.    All conditions precedent to the relief requested by KMG have occurred, have been performed or otherwise satisfied, or are excused, have been waived or SMECI is barred from asserting or relying upon them due to its prior material breach or breaches of the MSA.

## VI.    ATTORNEYS' FEES AND PRE-AND POST-JUDGMENT INTEREST

60.    KMG is entitled to recover its reasonable attorneys' fees and expenses from SMECI pursuant to Texas Civil Practice and Remedies Code section 38.001, *et seq.*, under Section 5.28 (j) of the MSA, 28 U.S.C. § 2202, and as otherwise allowed by law or equity.

61.    KMG is entitled to recover pre-and post-judgment interest allowed by applicable law.

## VII.    DEMAND FOR DISPUTE RESOLUTION BY COURT AND FOR JURY TRIAL

62.    The MSA provides for arbitration of disputes, but either party can instead pursue litigation if the amount of potential damages exceeds two (2) times the current Risk Management Fee in the MSA.  **Ex. 1** at p. 38; § 5.27.5.  The Risk Management Fees before any deductions, for 2018 and 2019 were $710,000 and for 2020, before any deductions, was $355,000.  While the phrase "current Risk Management Fee" is ambiguous, the amount in controversy here exceeds more than two (2) times any reasonable construction of "current Risk Management Fee" and KMG elects dispute resolution by the Court and **hereby demands a trial by jury**.

## VIII.   PRAYER FOR RELIEF

KMG respectfully requests that SMECI be cited to appear and that upon hearing before this Court, this Court confirm an award granting it judgment from and against SMECI for:

    a.   actual damages;

    b.   reasonable attorney fees and expenses;

    c.   costs of court;

    d.   pre-judgment and post-judgment interest as allowed by law and the MSA; and

    e.   such other and further relief to which KMG may be justly entitled.

Respectfully submitted,

**WINSTEAD PC**

By: _____*/s/ Elliot Clark*_____
Elliot Clark
State Bar No. 24012428
Federal ID No. 24638
Email: eclark@winstead.com
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: 512-370-2806
Facsimile: 512-370-2850

**ATTORNEYS FOR PLAINTIFF
KIEWIT MINING GROUP INC.**

Of Counsel:
Mark C. Guthrie (*Pro Hac Vice* Request to be Submitted)
State Bar No. 08636600
Federal ID No. 6213
Email: mguthrie@winstead.com
Cody N. Schneider (*Pro Hac Vice* Request to be Submitted)
Email: cschneider@winstead.com
State Bar No. 24073595
Federal ID No. 2228631
WINSTEAD PC
600 Travis Street, Suite 5200
Houston, TX  77002
Telephone: (713) 650-8400
Facsimile: (713) 650-2400